Jessica T. and Halver L. **MOOLENAAR**

v.

**GOVERNMENT OF the VIRGIN ISLANDS and Virgin Islands Port Authority.**

**Appeal of GOVERNMENT OF the VIRGIN ISLANDS.**

No. 86–3301.

United States Court of Appeals, Third Circuit.

Argued May 1, 1987.

Decided July 2, 1987.

Rehearing and Rehearing In Banc Denied July 27, 1987.

---

Leroy A. Mercer, Atty. Gen., Rosalie Simmonds Ballentine and Karl Raymond Percell (argued), Asst. Attys. Gen., St. Thomas, V.I., for appellant.

Randall Scott Johns (Argued), Christiansted, St. Croix, for appellee.

Before SEITZ, HIGGINBOTHAM, and ROSENN, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises the question of whether, pursuant to Fed.R.Civ.P. 60(b)(6), a dis-

trict court may reopen a final judgment assertedly based on an incorrect set of facts, where the plaintiffs' attorney allegedly possessed but did not present, and the Government's trial attorney should have received but by virtue of an honest mistake did not receive, evidence of the actual facts. In *Moolenaar v. Government of the Virgin Islands,* 729 F.2d 1448 (3d Cir. 1984) (memorandum opinion) [*Moolenaar I*], we affirmed the district court's finding of "mutual mistake" surrounding the question of whether the plaintiffs' lease from the Government of 98.307 acres of land included an historic "Great House" and surrounding cottages and land, and upheld a reformation of the contract to carve the area claimed by the plaintiffs out of the lease. We also remanded to the district court for further consideration of whether the plaintiffs were entitled to receive all previously collected rents.

Approximately a month and a half after the district court's decision on remand, but almost two years after its original judgment, the plaintiffs brought the present action to reopen the judgment. This action was based on credible evidence that the Government had in fact intended the disputed land to be a part of the plaintiffs' lease. Accordingly, the district court reopened the judgment pursuant to Fed.R. Civ.P. 60(b)(6), and the Government appeals. We vacate and remand with directions to reinstate the judgment in *Moolenaar I.*

## I.

In 1974 the Government of the Virgin Islands leased to the plaintiffs, Jessica and Halver Moolenaar, 98.307 acres of land "for the purpose of farming or the grazing or breeding of livestock, and for no other purpose whatsoever...." The lease had a term of ten years renewable at the Moolenaars' option, provided for an annual rent of $15 per acre per year, and required additional payments to the Government if the

Moolenaars were to sublease at a higher rent.

Although most of the above-mentioned land was covered with underbrush, the land as described included an historic "Great House" and surrounding cottages which were rented out and used by the Government. A dispute eventually arose in 1979 over the Government's use of this property, however, and the Moolenaars brought suit on December 30, 1980, against the Government seeking damages for, *inter alia,* wrongful exclusion from the Great House and cottages. After hearing the evidence presented, the district court on February 9, 1983, concluded that there had been a "mutual mistake" between the parties, reformed the contract prospectively to carve the disputed land out of the plaintiffs' lease,[1] and awarded the plaintiffs all rents previously collected for the land. On February 22, 1984, this court affirmed the finding of mutual mistake, but remanded to the district court for further consideration of whether the plaintiffs were entitled to the previously collected rents. On November 16, 1984, the district court decided that they were not.

On December 29, 1984, approximately six weeks after the district court's decision on remand but more than a year after its original judgment, the Moolenaars filed a *pro se* motion for retrial. This motion was based, essentially, on what the Moolenaars alleged was newly discovered evidence and inadequate representation by prior counsel. The district court held a hearing on the motion on January 15, 1986.

At the motion hearing, the Moolenaars presented three witnesses: Territorial Court Judge Raymond L. Finch, who had been the Moolenaars' attorney during the 1974 negotiations with the Government; Assistant Attorney General Victor Schneider, who had been assistant legal counsel in the Virgin Islands legislature; and plaintiff Jessica Moolenaar. Judge Finch testified that despite having originally drafted the lease to exclude the disputed lands, and

---

1. In *Moolenaar I,* a panel of this court noted in its memorandum opinion that "Mrs. Moolenaar was quite candid at trial in describing her surprise when she was told that the lease included the Great House." (footnote omitted).

having arranged for a surveyor to overlay the excluded portion on a public works drawing of the entire parcel, the Government insisted that the Moolenaars take the entire property, all 98 acres, or nothing. Finch also testified that before the matter went to trial in 1983 he alerted the office of the Attorney General to the above-stated facts, and that he had turned over the proposed lease and attached map to the Government in his original negotiations. The Moolenaars' trial counsel, Kenneth R. Lindquist, never called Judge Finch to testify at the trial, and the Moolenaars are suing Lindquist in a separate action for malpractice.

Schneider testified that after having been asked to review the initial draft lease on the legislature's behalf, he spoke to either James Bough or Bruce DeLemos, both of whom Finch had previously identified as the Governor's agents in negotiations regarding the lease, and was told that the Government was preparing a new lease which would not exclude the buildings. Schneider therefore verified the existence of the draft lease, and indeed the map attached to that lease was introduced into evidence at the January 1986 hearing.

Based on the above, on January 21, 1986, the district court filed a memorandum opinion vacating its earlier order in *Moolenaar I*, finding that "this misrepresentation and circumvention by the government was a wrongful act and that it is inequitable for the government to retain the benefits of those acts and omissions." The court cited Fed.R.Civ.P. 60(b)(3), which allows a court to reopen a judgment based on fraud, misrepresentation, or other misconduct of an adverse party, as authority for vacating

the prior order, and ordered that the matter be scheduled for the further taking of evidence.[2] At the later hearing, which took place on February 3, 1986, and which was followed by oral argument on February 5, the court found that there was in fact no misconduct, but rather an inadvertent lack of communication: the correct information "had been passed on to one assistant attorney general who failed by reason of an honest mistake to pass it on to the assistant attorney general actually in charge of trying the case."[3] Nevertheless, the court concluded that the lease covered all the disputed land, including the Great House and adjacent cottages, and that the Moolenaars were entitled to $56,700 in lost rents, together with attorneys' fees and other costs.

On February 19, the district court entered an order *nunc pro tunc* to February 5 granting the Government's motion to reconsider the January 21 order, but leaving that order in full force and effect. The court held that although its finding that there was no Government misconduct precluded a new trial pursuant to Fed.R.Civ.P. 60(b)(3), a new trial was justified by the "catchall clause," Fed.R.Civ.P. 60(b)(6), because *Moolenaar I* was "based on a set of facts which were incorrect," and because "the government knew of the correct information ... [but] failed by reason of an honest mistake to pass it on...."[4] The Government appeals from the district court's grant of a new trial, as well as from the final judgment entered on April 11.

## II.

Fed.R.Civ.P. 60(b) provides, in pertinent part:

---

2. It is interesting to note that none of the four assistant attorneys general present at the January 15 hearing would represent the Government, as they claimed that the assistant attorney general in charge of the case was outside the territory negotiating another matter. The district court doubted the veracity of this excuse and the hearing proceeded as if by default.

3. Because the transcripts from the February 3 hearing and February 5 oral argument do not appear in the record, the precise facts found by the district court are unclear. Presumably, however, it was Judge Finch whom the court

found initially passed the correct information on to an assistant attorney general.

4. The court therefore also rejected the Moolenaars' arguments that they were entitled to a new trial pursuant to Fed.R.Civ.P. 60(b)(1) because of mistake, inadvertence, or excusable neglect, and that they were entitled to a new trial pursuant to Fed.R.Civ.P. 60(b)(2) because of newly discovered evidence. As to the latter, the court ruled that Fed.R.Civ.P. 60(b)(2) did not apply because the "newly discovered evidence" was available to the plaintiffs at the original trial.

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

In the present case, the district court eventually concluded that Rules 60(b)(1)–(3) did not apply,[5] but nevertheless granted relief pursuant to Rule 60(b)(6).

As this court recently stated in *Kock v. Government of the Virgin Islands*, 811 F.2d 240 (3d Cir.1987), Rule 60(b)

> must be applied "[s]ubject to the propositions that the finality of judgments is a sound principle that should not lightly be cast aside, [and] that clause (6) is not a substitute for appeal...." *It is intended to be a means for accomplishing justice in extraordinary situations*, and so confined, does not violate the principle of the finality of judgments.

*Id.* at 246 (emphasis added) (quoting 7 *Moore's Federal Practice* § 60.27[2] (2d ed. 1985)). In *Kock*, we denied relief from a money judgment rendered against the Government of the Virgin Islands where relief was sought on the grounds that the Government's liability was predicated on the presence of insurance which turned out to be illusory because the insurance carrier had gone into liquidation.

Rule 60(b) "does not confer upon the district courts a '*standardless* residual of discretionary power to set aside judgments.'" *Martinez-McBean*, 562 F.2d at 911 (quoting both *Mayberry v. Maroney*, 529 F.2d 332, 337 (3d Cir.1976) (*Mayberry I*), and *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir.1977) (*Mayberry II*), and adding emphasis). The remedy provided by Rule 60(b) is "extraordinary, and special circumstances must justify granting relief under it." *Page v. Schweiker*, 786 F.2d 150, 158 (3d Cir.1986) (Garth, J., concurring). *See Marshall v. Board of Educ.*, 575 F.2d 417, 425 (3d Cir.1978) (change in the law not extraordinary); *Martinez-McBean v. Government of the Virgin Islands*, 562 F.2d 908, 911 (3d Cir.1977) (legal error, inconsistencies with legal precedent, and impatience with *pro se* plaintiff's lack of legal skill not extraordinary); *Mayberry II*, 558 F.2d at 1163 (changed circumstances not extraordinary); *Vecchione v. Wohlgemuth*, 558 F.2d 150, 159 (3d Cir.) (Commonwealth's unwillingness to return money or entertain court proceedings not extraordinary) (quoting *Mayberry I*, 529 F.2d at 335), *cert. denied*, 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977); *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir.1975) (allegation that jury did other than what it intended not extraordinary). *See also Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950) (denaturalization judgment erroneous and failure to appeal on advice of counsel and Alien Control Officer not extraordinary). *Compare Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (extraordinary circumstance found

---

5. Although the plaintiffs have argued in their brief that Rules 60(b)(1)–(3) do apply, the Moolenaars voluntarily withdrew their cross-appeal from the district court's April 11 order, and never filed a cross-appeal from the district court's February 19 order. Further, although the district court's remanded judgment was entered only six weeks prior to the present action, the reason for the attack upon that judgment was available for attack upon the district court's original judgment, which was rendered more than a year prior to the present action. Motions under Rule 60(b)(1)–(3) must be brought within one year of the entry of a final judgment. An appeal does not toll this time period. Therefore, relief under Rules 60(b)(1)–(3) is time barred. *See Jones v. Anderson-Tully Co.*, 722 F.2d 211, 212–13 (5th Cir.1984) (per curiam); *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975); 7 Moore's Federal Practice § 60.28[2] n. 20 (2d ed. 1985). Accordingly, we will not address the merits of the plaintiffs' claim for relief pursuant to Rules 60(b)(1)–(3).

where United States obtained a default judgment while holding the plaintiff in jail). In the present case, we fail to see any extraordinary circumstances which justify relief pursuant to Rule 60(b). Indeed, the district court did not point to any extraordinary circumstance; but rather, held that relief was justified by the "manifest injustice" which would occur if relief were not granted. According to the district court, "[i]t would be unjust, inequitable, unfair, and a gross miscarriage of justice" to allow *Moolenaar I* to stand, because *Moolenaar I* was "based on a set of facts which were incorrect," and because "the government knew of the correct information ... [but] failed by reason of an honest mistake to pass it on...." As noted above, however, this is not the standard by which a district court's discretionary power to set aside judgments is measured. *See Marshall*, 575 F.2d at 423 (characterization of district court's action as "unequitable" insufficient to establish showing required for the modification of a final judgment). The exercise of a district court's discretionary power requires an extraordinary circumstance.

As in *Ackermann v. United States*, *supra*, where the plaintiff had failed to appeal the cancellation of his naturalization certificate because his attorney told him he would have to sell his home to pay costs and an Alien Control officer told him that he would be released at the end of the war, the present case does not present any extraordinary circumstances. The Moolenaars simply failed to present evidence which was available to them from the outset. The Moolenaars negotiated the lease with the Government in 1974. They did not bring their action until December 1980. Counsel who represented them (Judge Finch) was available to testify, and an effort to produce his testimony and the testimony of legislative counsel Schneider long after the initial trial and appeal—years after suit was initially commenced—is not an extraordinary circumstance justifying the special relief sought. A party that has not presented known facts helpful to its case by witnesses available to it "when it had the chance cannot ordinarily avail itself on rule 60(b) after an adverse judgment has been handed down." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C.Cir.1980). Reopening the case many years later to receive such testimony totally disregards the important principle that litigation must finally end, not to speak of the risk of manipulating and fabricating evidence with the long lapse of time. Rule 60(b) is not a substitute for appeal. *See, e.g., Kock*, 811 F.2d at 246.

In support of its conclusion that the judgment in this case should be reopened, the district court relied upon *Good Luck Nursing Home, Inc. v. Harris, supra*, and *Chicago & E. Ill. R.R. v. Illinois Cent. R.R.*, 261 F.Supp. 289 (N.D.Ill.1966). *Chicago & E. Ill. R.R.* is readily distinguishable, however, as involving an extraordinary circumstance. The plaintiff's failure to present evidence in that case was based upon an expectation that there would be a second hearing for permanent relief, and therefore the plaintiffs busied themselves preparing their most crucial evidence for that hearing. The court, however, ruled that based on the evidence produced at the first hearing no further hearing was necessary. *Id.* at 305. Accordingly, the court, and not as here, the plaintiffs, was responsible for the failure to present evidence. The court, therefore, concluded that it had "sufficient reason to invoke Rule 60(b) in the circumstances in this case." *Id.*

*Good Luck Nursing Home* presents a more difficult case. In *Good Luck Nursing Home*, the Government failed, for no apparent reason, to advise the district court that the bulk of the money for which the nursing home sought reimbursement related to the legal defense of a related fraud case. This fact would have changed the outcome, and therefore, after setting forth the relevant standards, including a standard set forth in our own opinion in *Marshall, supra*, the D.C. Circuit concluded that a district court is not "powerless to correct errors into which it is led by the parties' failure to make the key facts known." *Id.* at 577. Although noting in a footnote the *Ackermann* requirement of an extraordinary circumstance, *id.* at 577 n.

**1348**

3, no such circumstance appears to have been present.

In the sentence following its statement of the district court's power to correct errors, however, the D.C. Circuit went on to stress that a previously undisclosed fact must be *timely* presented if it is to justify reconsideration under Rule 60(b)(6). *Id.* at 577. Later, the court noted:

> [T]he rule 60(b) motion in this case was made within three months of the original judgment, and the substitute order entered about three months after that. Although the appellant might have been disappointed by having its initial victory so quickly snatched away, it has not been so prejudiced as to make reconsideration under the rule inappropriate.... In this case, then, the interest that litigation must some day end was only slightly impinged, while the countervailing interest that justice be done was seriously at stake.

*Id.* at 577–78. Indeed, as the court pointed out in a footnote, the Rule 60(b)(6) motion in *Good Luck Nursing Home* would even have been timely if brought pursuant to Rule 60(b)(1), which contains a strict one year time limitation in which to bring an action. *Id.* at 578 n. 4. Therefore, although we do not necessarily endorse any suggestion that, if brought within one year, a Rule 60(b)(6) motion may be maintained absent extraordinary circumstances, we note that the temporal proximity between the judgment and Rule 60(b)(6) motion in *Good Luck Nursing Home* distinguishes that case from the present one.

■ In the present case, the Moolenaars brought their Rule 60(b)(6) motion almost two years after the district court's initial judgment. Although the motion was brought only six weeks after the district court's judgment on remand, the reason for the attack upon that judgment was available for attack upon the original judgment. *See supra* at 1346 n. 5. Accordingly, in addition to concluding that this case does not present any extraordinary circumstances, we further conclude that the Moolen-

aars' motion was "not made within a reasonable time." Fed.R.Civ.P. 60(b). *See Stradley*, 518 F.2d at 493.

### III.

In summary, we reaffirm our untrammeled line of cases holding that absent extraordinary circumstances a district court may not grant a new trial pursuant to Rule 60(b)(6) merely because it believes the prior judgment may have been inequitable, and conclude that the facts of this case do not present any extraordinary circumstances. Further, because the relevant evidence was available to the plaintiffs at the time of the original trial, we also conclude that the plaintiffs' request for a new trial almost two years after the original trial was not brought within a reasonable time. Accordingly, the judgment of the district court granting a new trial, as well as the final judgment of April 11, 1986, will be vacated and the case remanded with directions to reinstate the district court's November 16, 1984, amended judgment.[6]

---

**6.** In view of our disposition of this appeal, we do not reach the government's appeal from the damages awarded in the district court's April 11, 1986, final judgment.